1  Hon. Rosalyn M. Chapman (Ret.)
2  JAMS
   555 West 5th Street, 32nd Floor
3  Los Angeles, CA 90013
   213-253-9776
4  SPECIAL MASTER

5

6              UNITED STATES DISTRICT COURT

7              CENTRAL DISTRICT OF CALIFORNIA

```
FILED
CLERK, U.S. DISTRICT COURT

6/1/20

CENTRAL DISTRICT OF CALIFORNIA
BY:    LB        DEPUTY
```

8

9   NATURAL-IMMUNOGENICS CORP., a      )
10  Florida corporation,               )
                                       )
11              Plaintiff,             )   Case No: 2:19-mc-00011-JVS-MAA
                                       )
12        v.                           )   (JAMS Ref. No: 1220055347)
                                       )
13  NEWPORT TRIAL GROUP, a California  )
    corporation; SCOTT J. FERRELL, a California )
14  resident; RYAN M. FERRELL, an Arizona )
    resident; VICTORIA C. KNOWLES, a   )
15  California resident; DAVID REID, a California )
    resident; ANDREW LEE BASLOW, a     )
16  California resident; ANDREW NILON, a )
    California resident; SAM PFLEG, a   )
17  California resident; MATTHEW DRONKERS, )
    a California resident; TAYLOR DEMULDER, )
18  a Nevada resident; SAM SCHOONOVER, )
19  a California resident; GIOVANNI SANDOVAL, )
    an Arizona resident; and DOES 1 through 10, )
20  inclusive,                         )
                                       )
21                                     )
                                       )
22              Defendants.            )
                                       )
23  _____)

24     **ORDER AWARDING REASONABLE EXPENSES TO PLAINTIFF (Dkt. No. 86)**

25

26        On April 9, 2020, Plaintiff Natural Immunogenics Corp. ("NIC") filed a request for fees

27  and costs against Defendant Newport Trial Group ("NTG") and the supporting declaration of

28  Joshua S. Furman with exhibits ("Furman Decl."). (Dkt. Nos. 86, 86-1-86-3).  On April 20, 2020,

                                          1

NTG filed its opposition and the opposing declarations of Daniel M. White ("White Decl.") and Stephanie A. Sperber ("Sperber Decl.").  (Dkt. Nos. 87, 87-1-87-2 ).  And on April 30, 2020, NIC filed a reply and the supplemental declaration of Joshua S. Furman ("Furman Supp. Decl.") (Dkt. Nos. 88, 88-1).  On May 5, 2020, NIC filed notice of errata re reply. (Dkt. No. 89).

On May 20, 2020, the Special Master issued a [Tentative] Order Awarding Reasonable Expenses to Plaintiff, which was served on the parties.  On May 28, 2020, oral argument was held telephonically before Hon. Rosalyn Chapman, Special Master.  Joshua S. Furman and Peter A. Arhangelsky, attorneys with the law firm Emord & Associates, appeared on behalf of Plaintiff NIC; David Darnell and Stephanie Sperber, partners with the law firm Callahan & Blaine APLC, appeared on behalf of Defendants NTG and Scott Ferrell; Kyle A. Riddles, an attorney with the law firm Bremer Whyte Brown & O'Meara LLP, appeared on behalf of Defendants Ryan Ferrell, Victoria Knowles,  and  Andrew Baslow; Sanjay S. Karnick, an attorney with the law firm Amin Talati Wasserman LLP, appeared on behalf of counter-defendants; and there was no appearance by counsel on behalf of Defendants Andrew Nilon, Sam Pfleg, Matthew Dronkers, Taylor Demulder, Sam Schoonover and Giovanni Sandoval.

## I. Relevant Background.

On January 10, 2018, in the United States District Court for the Western District of North Carolina (Asheville Division), case no 1:18-mc-00003-MR-WCM ("North Carolina case"),[1] NTG

---

[1]   The Special Master, pursuant to Fed.R.Evid. 201, takes *sua sponte* judicial notice of the docket sheet in *Natural Immunogenics Corp. v. Newport Trial Group, et al.*, Western District of North Carolina, case no. 1:18-mc-00003-MR-WCM.  Documents filed in the Western District of North Carolina will referenced by the docket number in the case, as "W.D. N.C. Dkt. No. __."

filed a motion to compel compliance with Document Subpoena and Deposition Subpoena to non-party Carlos F. Negrete ("Negrete"), issued by the District Court for the Central District of California (the "Central District"), and a motion to change venue and to transfer the case to the Central District. (W.D. N.C. Dkt. Nos. 1-2).   On January 23, 2018, NIC filed a motion to intervene and a motion to dismiss NTG's motion to compel Document Subpoena for lack of jurisdiction. (W.D. N.C. Nos. 14-17).   On January 24, 2018, Negrete filed oppositions to NTG's motions to compel and to change venue, as well as other documents.  (W.D. N.C. Dkt. Nos. 18-20).   On January 31, 2018, NTG filed replies to Negrete's oppositions to the motion to compel and motion to change venue.  (W.D. N.C. Dkt. Nos. 25-26).   On February 6, 2018, Negrete filed a notice of joinder in, and non-opposition to, NIC's motions to intervene and to dismiss the motion to compel compliance with Document Subpoena.  (W.D. N.C. Dkt. Nos. 27-28).  From February 6 through February 28, 2018, NTG, Negrete and NIC filed multiple documents relating to the foregoing motions. (W.D. N.C. Dkt. Nos. 29-45).

On April 19, 2018, Magistrate Judge Dennis Howell (the "Magistrate Judge") issued an Order granting, *inter alia*, NTG's motion to transfer the motion to compel compliance with Document Subpoena and Deposition Subpoena to the Central District.  (W.D. N.C. Dkt. No. 46). On May 3, 2018, NIC filed Objections to the Magistrate Judge's Order.  (W.D. N.C. Dkt. No. 47). And on May 7, 2018, Negrete joined in NIC's Objections and also filed his own Objections to the Magistrate Judge's Order.  (W.D. N.C. Dkt. Nos. 49-50).   NTG filed responses to NIC's and Negrete's Objections (W.D. N.C. Dkt. Nos. 51-52) and NIC and Negrete filed replies.  (W.D. N.C. Dkt. Nos. 53-54).

On January 22, 2019, District Judge Martin Reidinger reviewed the Magistrate Judge's Order and overruled, in part, and accepted, in part, NIC's and Negrete's Objections; the district court affirmed the Order to transfer to the Central District NTG's motion to compel compliance with Deposition Subpoena and reversed the Order to transfer NTG's motion to compel compliance with Document Subpoena, finding the District of South Carolina was the only federal court with jurisdiction to enforce compliance with Document Subpoena.  (W.D. N.C. Dkt. No. 55).

On January 23, 2019, the North Carolina case was transferred to the Central District and was randomly assigned to District Judge Dolly M. Gee, with the case no. 2:19-mc-00011.  (Dkt. Nos. 56-75).  Judge Selna consented to the transfer of the case to his calendar, finding it relates to the ongoing matter, *Natural Immunogenics Corp. v. Newport Trial Group et al.*, case no. 8:15-CV-2034-JVS ("Primary Case").  (Dkt. No. 68).  On February 12, 2019, Judge Selna referred the motion to compel compliance with Deposition Subpoena to the Special Master.  (Dkt. No. 69).

The Special Master, after consulting with the parties, allowed the parties to file additional memoranda, which were filed on May 6 and May 22, 2019. (Dkt. Nos. 70-71).  On June 27, 2019, the Special Master issued an Order:  denying NTG's motion to compel compliance with Deposition Subpoena ("Negrete's recalled deposition"); finding NIC's request for a protective order was moot; granting NIC's request for reasonable expenses incurred in opposing NTG's motion to compel Negrete's recalled deposition; and denying NIC's request for reasonable expenses incurred opposing NTG's motion to compel compliance with Document Subpoena in the North Carolina case (the "Negrete & Fees Order").  (Dkt. No. 72).  On July 12, 2019, NIC filed Limited Objections and NTG filed Objections to the Negrete & Fees Order.  (Dkt. Nos. 75-76).

On March 24, 2020, District Judge Selna overruled NTG's Objections and sustained NIC's Limited Objections to the Negrete & Fees Order, thereby granting NIC's request for reasonable expenses incurred opposing NTG's motion to compel compliance with Document Subpoena, as well as NTG's motion to compel Negrete's recalled deposition. (Dkt. No. 84).   In its Order, the District Court specifically found NTG's motion to compel compliance with Document Subpoena was a "frivolous motion" and "the litigation brought in and spurred in North Carolina was not justified." (*Id.* at 10).   The District Court pointedly stated:   "[I]t was NTG who filed the initial subpoena requiring production in Greenville, South Carolina, despite knowing Negrete lived in North Carolina…. [A]nd NTG did not reissue the subpoena in North Carolina." (*Id.* at 12).

## II.  NIC's Request for Reasonable Expenses.

NIC seeks an award of attorney fees relating to the merits of the Negrete discovery disputes in the amount of **$76,785**, plus **$9,779** for the attorney fees motion and reply, and **$6,506** in costs, for a total award of $**93,070**.[2]  Reply at 21-22.  Generally, NIC contends its attorney fees cover legal work performed by lawyers and a paralegal with Emord & Associates ("Emord Firm) and legal work performed by two lawyers with Moore & Van Allen ("M&V"), who were local counsel in the North Carolina case.  The costs or expenses NIC seeks to recover are the Special Master's fees relating to the Negrete & Fees Order.   To support its request for attorney fees and costs, NIC

---

[2]   NIC's motion requests attorney fees relating to the merits in the amount of $77,741.25, plus $5,521.50 for the attorney fees motion,  and $6,506 in costs, for a total award of $89,768.75.  Motion at 1:17-21.  However, in its reply, NIC revises its request by *deducting* from the request for fees in the North Carolina case, a total of $956.25 (comprised of: 3.5 hours at $175/hour; .9 hours at $175/hour; 1.1 hours at $125/hour  (paralegal); and .15 hours at $325/hour.)  Reply at 3 n.2, 17-19.  And NIC further revises its request by *increasing* the attorney fees relating to the fees motion by adding $4,257.50 for preparation of the reply to NTG's opposition.  Furman Supp. Decl. ¶ 13.

relies on the declarations of its counsel, Joshua Furman, and attached exhibits.

NIC asserts Emord Firm's hourly rates have previously been found to be reasonable by the Special Master in the Primary Case, as well as by the Ninth Circuit. And M&V's attorneys' hourly rates are reasonable: Kathryn Cole, a partner, charged $510 per hour; and Minnie Kim, an associate, charged $325 per hour. NIC has shown that M&V's attorneys have been awarded those rates by a district court.

NIC also contends that the number of hours spent on legal work in the North Carolina case, i.e., 95.25 hours,[3] was reasonable in light of NTG's aggressive litigation, the number of documents filed over a two-year period (90 docket entries), and the fact that NIC prevailed on all motions except the motion to intervene, which became moot. NIC emphasizes that in the North Carolina case, NIC brought two separate motions, i.e., a motion to intervene and a motion to dismiss, although the legal work on both motions initially were combined as reflected in the time-sheets. NIC's attorneys' hours were reasonably spent opposing NTG's frivolous claim of jurisdiction to compel compliance with Document Subpoena in the North Carolina case. Opposing the recalled deposition of Negrete in the Central District required a close review of Negrete's deposition transcript, as well as legal research, which comprise the bulk of attorneys' hours and were reasonable.

---

[3]  This figure reflects NIC's voluntary deduction of 5.65 hours, stated in its reply.

NTG opposes NIC's request, challenging NIC's litigation strategy to appear in the North Carolina case, arguing NIC should have agreed to transfer the case to the Central District where the Special Master and Court are familiar with the parties and the issues, as NTG requested in the motion to transfer. NTG's unnecessary appearance in the North Carolina case resulted in dozens of purposeless filings and delayed the resolution of NTG's motions for more than a year after the motions were fully briefed. None of the hours billed by Emord Firm and M&V for legal work performed in the North Carolina case were reasonable hours or compensable. To support its opposition, NTG relies on the declarations of Stephanie Sperber, its counsel, and Daniel M. White, an expert witness.

NTG acknowledges that Emord Firm's attorneys' and paralegal's hourly rates are reasonable, but contends the hourly rates for M&V's attorneys are not reasonable in light of the limited role local counsel played in the North Carolina case. Further, NTG argues, NIC's attorney fees request is outrageously high for a simple discovery dispute, i.e., $90,000. The request should be denied in its entirety or, alternatively, reduced to $15,000, which is a reasonable amount for successfully opposing Negrete's recalled deposition. As discussed above, there was no reason for NIC to hire M&V and to appear in the North Carolina case, especially when NIC and Negrete entered into a joint defense or common interest agreement and Negrete was able to oppose NTG's motions to compel.

Moreover, NTG asserts, the legal work performed by Emord Firm was duplicative work because Emord Firm routinely utilized four or five attorneys and one paralegal on the same issues, with each attorney reviewing and redoing each other's work. Similarly, the legal work performed

7

by M&V was duplicative of work by Emord Firm.  Apart from the duplicative nature of the legal services performed, Emord Firm billed for unnecessary legal work, such as billing 45 hours for filing an opposition to NTG's motion to compel Negrete's recalled deposition in the Central District although NIC's and Negrete's oppositions had been filed a year previously, billing 11.3 hours to prepare for a 30-minute telephonic oral argument before the Special Master on June 27, 2019, and billing 27.6 hours for filing Limited Objections to the Special Master's Order.

Some hours for legal work performed by Emord Firm and M&V are improper on their face, such as attorneys billing for administrative tasks or tasks unrelated to the case, and vague or block-billings that cannot be analyzed.  In short, Emord Firm's and M&V's hours should be reduced by taking a 30% across-the-board deduction.  Finally, Emord Firm's time spent preparing the attorney fees motion also is excessive, as are the costs they seek to recover for the Special Master's fees, some of which were not related to the Negrete discovery disputes.

In reply, NIC argues, the White Declaration should be disregarded because White did not understand the nature of the proceedings, as reflected by his failure to review the complete file, including the Order of the District Judge in the North Carolina case and Judge Selna's Order granting NIC attorney fees; thus, there is no valid basis for White's opinions.  The White Declaration is pure legal argument.  And White is wrong to criticize NIC's strategy of attempting to intervene in the North Carolina case.  NIC could not consent to transfer the case to the Central District because the only district court with jurisdiction or authority to transfer the motion to compel compliance with Document Subpoena would have been the district court in South Carolina; not the Western District of North Carolina, where the motion to compel was pending.

Thus, NIC had no choice but to move to intervene in the North Carolina case.  And the overall success of NIC's litigation strategy cannot be ignored.  NTG's motion to compel compliance with Document Subpoena was denied without prejudice and NTG's motion to compel Negrete's recalled deposition was not granted, but instead was transferred to the Central District where it was denied.

## III.  DISCUSSION.

"The most useful starting point for determining the amount of a reasonable [attorney] fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  This figure has become known as the lodestar.  *See, e.g., Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) ("[C]ourts must calculate awards for attorneys' fees using the 'lodestar' method.  The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." (internal quotation marks and citations omitted) (per curiam)). As part of the lodestar, the courts include the hours spent by the moving party's attorneys in seeking attorney fees as time reasonably expended on the litigation.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013).

"[T]he established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'"  *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citation omitted); *see also Margolin v. Regional Planning Comm'n* (1982) 134 Cal. App. 3d 999, 1004  ("'[A] reasonable hourly rate is the product of a multiplicity of factors ... the level

of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case.'" (quoting *Copeland v. Marshall*, 641 F.2d 880, 892 (D.C. Cir. 1980)).

The moving party has the initial burden of establishing that the hours it claims are reasonable, which may be accomplished by the submission of billing records. *Gonzalez*, 729 F.3d at 1202. "Ultimately, a 'reasonable' number of hours equals '[t]he number of hours … [which] could reasonably have been billed to a private client.'" *Id.* at 1202 (citation omitted). However, an attorney's billing records may "include hours that could not reasonably be billed to a private client and, therefore, are not properly included [as reasonable].… For example, records may contain entries for hours that are 'excessive, redundant, or otherwise unnecessary.'" *Id.* at 1203 (citation omitted). "'[W]hen faced with a massive fee application[,] the … court has the authority to make across-the board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application.'" *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1993) (citations omitted)).

Courts "treat the lodestar figure as presumptively reasonable and adjust it only in rare or exceptional cases." *Cunningham v. Cnty of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1989); *see also id.* ("[I]n ordinary cases, a plaintiff's 'degree of success' or the 'results obtained' should be adequately accounted for in the lodestar.  Only in rare or exceptional cases will an attorney's *reasonable* expenditure of time on a case not be commensurate with the fees to which he is entitled." (italics in original)).  The lodestar figure may be increased or decreased depending on a variety of factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975),

*abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). *Stetson v. Grissom*, 821 F.3d 1157 (9th Cir. 2016). Here, NIC does not request that the lodestar should be increased and NTG does not specifically address the *Kerr* factors in arguing the lodestar should be decreased.

Finally, it is well recognized that the Special Master, in discussing the lodestar factors of reasonable hours and reasonable hourly rates, may properly apply her experience as a judge in the Los Angeles area to determine the value of the professional services rendered by NIC's counsel. *See, e.g., Vargas v. Howell*, 949 F.3d 1188, 1199 (9th Cir. 2020) ("In evaluating the requested rate, judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees." (quotation marks omitted)); *Ingram v. Oroudjian,* 647 F.3d 925, 928 (9th Cir. 2011) (per curiam) (" The district court is in the best position to determine in the first instance the number of hours reasonably expended in furtherance of the successful aspects of a litigation and the amount which would reasonably compensate the attorney."); *PLCM Group, Inc. v. Drexler* (2000)  22 Cal. 4th 1084, 1096 ("The value of legal services performed in a case is a matter in which the trial court has its own expertise.  The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony." (internal quotation marks and citation omitted)).

NIC seeks a total award of attorney fees and costs in the amount of **$93,070**, comprised of **$76,785** for **249.70 hours** of legal work by Emord Firm and M&V on the merits of the Negrete discovery disputes, plus **$9,779** for **36.7 hours** of legal work by Emord Firm relating to the request for attorney fees, and **$6,506** in costs.  Furman Decl. ¶¶ 5-7, 38-41, Exhs. 1-3; Furman Supp. Decl.

¶ 13.  The following attorneys and paralegal with Emord Firm performed legal work on behalf of NIC in the North Carolina case and Central District:

- Jonathan W. Emord (JWE) bills at the hourly rate of $600. He is the founding partner, has been practicing law for 34 years, and is licensed to practice law in the States of Virginia and Illinois and the District of Columbia.

- Peter A. Arhangelsky ("Arhangelsky") (PAA) bills at the hourly rate of $425.  He is a partner and the lead counsel in the Primary Case, has been practicing law for 12 years, and is licensed to practice law in the States of California and Arizona.

- Joshua S. Furman ("Furman") (JSF) bills at the hourly rate of $275.  He is a senior associate and was the primary counsel in the North Carolina case and Central District relating to the Negrete discovery motions, has been practicing law for five or six years, and is licensed to practice law in the State of Arizona.

- Bryan G. Schatz (BGS) bills at the hourly rate of $175.  He is a junior associate, has been practicing law for two or three years, and is licensed to practice law in the States of Illinois and Arizona.

- Jennifer A. Fernandes (JAF) bills at the hourly rate of $125.  She is a paralegal.

Furman Decl. ¶¶ 23-27, 30.  Additionally, two attorneys with M&V were local counsel in the North Carolina case:

- Kathryn G. Cole ("Cole") (KGC) bills at the hourly rate of $510.  She is a partner who specializes in intellectual property litigation in the federal courts, has been practicing law for 13 years, and is licensed to practice law in the States of California and North Carolina.

12

- Minnie Kim ("Kim") (KM3) bills at the hourly rate of $325.  She is an associate, has been practicing a few years, and is licensed to practice law in the States of New York and California.

Id. ¶¶ 28-29, Exhs. 4-6.

### a. Reasonable Hourly Rates

The Special Master has previously found Emord Firm's hourly rates for attorneys and paralegal to be reasonable (Dkt. No. 559), and NTG acknowledges the reasonableness of Emord Firm's hourly rates.  Thus, Emord Firm's rates are not disputed.  However, NTG disputes the reasonableness of North Carolina's local counsel's hourly rates, relying on the declaration of its expert witness, Daniel White.[4]  See White Decl. ¶¶ 34-38.  White states that the "levels of experience" of M&V's attorneys "do not warrant the rates they charged[,]" noting neither Cole nor Kim is a very experienced practitioner and neither is rated by Martindale-Hubble, AVVO or listed in *Best Lawyers in America*.  Id. ¶¶ 36-38.  And White further opines that M&V's role as local counsel in a discovery dispute was to ensure compliance with the local rules, which does not warrant hourly rates of $510 and $375 for Cole and Kim, respectively  – especially when Furman was lead counsel on the Negrete discovery matters and his hourly rate was $275.  *Id.* ¶ 37.

---

[4]  The Special Master finds White qualifies as an expert witness under Federal Rule of Evidence 702.  *Levin v. Dalva Bros.*, 459 F.3d 68,79 (1st Cir. 2006).  White graduated from Hastings College of Law in 1975, and since being admitted to the State Bar has practiced civil law with several firms, including his current firm, White & Amundsen, which he founded.  White Decl. ¶¶ 4-5.  Generally, White represents defendants in legal malpractice and other civil matters. Id. ¶¶ 8-12, 16, 18.  Over the years, White has tried over 100 cases with the majority being before juries.  Id. ¶ 19.  Additionally, White serves as a consultant and expert witness  in matters relating to attorney standards of conduct and practice, including attorney fees disputes.  Id. ¶ 20.

NIC relies on the Furman Declaration and attached exhibits to support the reasonableness of M&V's hourly rates.  The exhibits include M&V's attorneys' biographies and an Order issued by the District Court for the Middle District of North Carolina on January 25, 2018, in *Ferrellgas LP v. Best Choice Products*, case no. 1:16 CV 00259-LCB-JLW, Dkt. No. 53, awarding Cole attorney fees at hourly rates ranging from $495 to $510 and Kim attorney fees at hourly rates ranging from $300 to $325. Furman Decl. ¶ 32, Exh. 6.   NIC does not address White's views in its reply.

Obtaining reliable local counsel is never an easy task, *see, e.g.*, Furman Decl. ¶ 5, Exh. 1 (Jan 16/2018 "Spoke with multiple North Carolina attorneys to selection local counsel; emailed client re local counsel options"), and the Special Master does not fault NIC for selecting M&V as local counsel. Cole and Kim are extremely capable attorneys whose hourly rates reflect their specializations and skills in intellectual property matters, as recognized by the fees award in *Ferrellgas LP*, an intellectual property case.  However, M&V's role in the North Carolina case was to ensure NIC complied with the local rules when filing documents in the district court; not as intellectual property litigators.  In light of this limited role, Cole's and Kim's hourly rates as intellectual property practitioners were not reasonable. Accordingly, Cole's and Kim's reasonable hourly rates should be the same as Arhengelsky's and Furman's hourly rates, $425 and $275, respectively.  This reduces NIC's request for M&V's attorney fees to **$8,598.75** (including NIC's voluntary deduction of .15 hours of work by Kim).[5]

---

[5]   Based on Exhibit 2 to Furman Declaration, Cole's 18 hours at $425/hour totals $7,650 and Kim's 3.45 hours (subtracting .15 hours, as NIC agrees) at $275/hour totals $948.75, for a total amount of $8,598.75.

*b. Reasonable Number of Hours*

For the purpose of calculating the lodestar figure, the court has discretion to determine the number of hours reasonably expended on the case. *Hensley*, 461 U.S. at 437; *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended on other grounds by,* 808 F.2d 1373 (1987). To challenge attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged. Here, NTG relies on the declarations of Sperber and White to highlight the challenges to the number of hours NIC's counsel spent on the Negrete discovery disputes.

In opposing NTG's arguments, the Furman Declaration and attached exhibits are relied upon to support Emord Firm's and M&V's hours. See Furman Decl. ¶¶ 5-6, Exhs. 1-2. According to Furman, Exhibit 2 reflects V&M's hours; Exhibit 1 reflects Emord Firm's hours separated into two categories: (1) hours spent in the North Carolina case, and (2) hours spent opposing NTG's motion to compel Negrete's recalled deposition and motion for protective order in the Central District. *Id.* ¶ 8. As NIC suggests, it is useful to consider NIC's application for attorney fees separately for these two categories of legal work.

### i. Legal Work in North Carolina Case.

Reducing the Emord Firm's and M&V's hours for legal work in the North Carolina case by 5.65 hours as NIC voluntarily does, NIC's counsel spent a total of **95.25 hours** performing legal work in the North Carolina case. Furman Decl. ¶¶ 5-6, 12, 14-16, Exhs. 1-2. More specifically, Emord Firm spent 73.8 hours and M&V spent 21.45 hours. Applying Emord Firm's reasonable hourly rates, this amounts to $22,715 ($23,622.50 - $907.50) for their legal work, and

at V&M's reduced hourly rates, this amounts to $8,598.75 for M&V's legal work, for a total amount of **$31,313.75** for legal work performed in the North Carolina case.

Emord Firm and M&V spent considerable time working on matters related to NIC's motion to intervene and motion to dismiss.  See, e.g., Exh. 1 (Jan 4/2018 "Discussed strategy re Carlos Negrete"); Jan 17/2018 ("Drafted initial draft of motion to intervene for JSF"); Jan 17/2018 ("Drafted detailed strategy email to client regarding the North Carolina Motion to Compel litigation"); (Jan. 31/2018 "Reviewed NTG Reply re Motion to Compel filed in NC action"); see also Exh. 2 (Jan 31/2018 "review NTG's reply in support of motion to compel and reply in support of motion to transfer venue"). These citations are not exhaustive and are highlighted only to show that Emord Firm's time records include *all* legal work performed in the North Carolina case.

NTG, relying on White's and Sperber's declarations, challenges *all* hours spent by NIC's counsel in the North Carolina case, arguing it was poor litigation strategy – if not a breach of fiduciary duty to NIC –   to refuse to agree to transfer the motion to compel Negrete's recalled deposition to the Central District, where the Special Master and Court are familiar with the case. White Decl. ¶¶ 41- 42.  According to White, an agreement to transfer the motion to compel Negrete's recalled deposition would have obviated *all* fees in the North Carolina case.  *Id.* ¶¶ 41-42; Sperber Decl. ¶¶ 5-6. But that is not true.  The motion to compel compliance with Document Subpoena would have remained in North Carolina because there was no jurisdiction to transfer the motion to the Central District, resulting in potential litigation in two district courts relating to Negrete's subpoenas.

As to the motion to compel Negrete's recalled deposition, NTG contends NIC could have encouraged Negrete to agree to transfer that motion to the Central District, rather than objecting to the transfer. Sperber Decl. ¶¶ 11-12. Although NIC and Negrete entered into a common defense agreement, Negrete filed his own papers in the North Carolina case, and the Special Master cannot conclude NIC controlled Negrete's legal decisions. To the contrary, as Negrete's deposition transcript reflects, Negrete appeared to take great pride in representing himself and making his own objections. And it is undeniable that Negrete, at all times, refused to consent to transfer the motion to compel his recalled deposition to the Central District. Without Negrete's consent to transfer the motion to compel his recalled deposition, that motion also remained in North Carolina.

Rule 24 sets forth standards for intervention as of right and permissive intervention. Fed.R.Civ.P. 24(a), (b).[6] Here, Negrete was counsel for NIC in the underlying *Andrew Nilon v. Natural-Immunogenics, Corp.*, 12 CV-0930-LAB-BGSx (S.D. Cal. 2012) (removed from San Diego County Superior Court), also known as the *Nilon* action, which is the basis for NIC's malicious prosecution claim and one of the eight cases underlying NIC's RICO claims. Clearly, Negrete possessed confidential client information acquired while representing NIC in the *Nilon* action.

---

[6] Rule 24(a)(2) provides that anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest" and who timely moves to intervene may do so as of right. Fed.R.Civ.P. 24(a)(2). A permissive right to intervene may be given on timely motion to anyone who "has a claim or defense that shares with the main action a common question of law or fact."Fed.R.Civ.P. 24(b)(1)(B).

Several circuit courts have found the threat of disclosure of confidential or privileged information constitutes an interest that may be affected and impaired, thus allowing a nonparty to intervene in an action. *See, e.g., Kirsch v. Dean*, 733 Fed. Appx. 268, 276 (6th Cir. 2018) ("Other circuits have stated or suggested that '[c]olorable claims of attorney-client privilege and work product privilege qualify as sufficient interest to ground intervention as of right,' and they very well may be right." (citations omitted)); *United States v. BDO Seidman*, 337 F.3d 802, 808 (7th Cir. 2003) ("A colorable claim of privilege could constitute a legally protectable interest sufficiently significant to warrant intervention as of right, assuming  that the three remaining factors [in Rule 24] also are satisfied."); *In re Grand Jury Subpoena*, 274 F.3d 563, 570 (1st Cir. 2001) ("Colorable claims of attorney-client privilege and work product privilege qualify as sufficient interest to ground intervention as of right." (citation omitted)); *United States v. AT&T*, 642 F.2d 1285, 1292 (D.C. Cir. 1980) ("Without the right to intervene in discovery proceedings, a third party with a claim of privilege in otherwise discoverable materials counsel suffer the obvious injustice of having his claim erased or impaired by the court's adjudication without ever being heard." (internal quotation marks and citation omitted)).

The Special Master need not decide whether under Rule 24(a)(2),  Negrete was able to adequately represent NIC's privilege interests in the North Carolina case.  Rather, it is sufficient for the Special Master to find, here, that it was not unreasonable for NIC to seek to protect its privileged information by moving to intervene in the North Carolina case.  For these reasons, the Special Master concludes that Emord Firm's and M&V's hours relating to the motion to intervene were not unreasonable.

Although White's Declaration does not directly address NIC's motion to dismiss NTG's motion to compel compliance with Document Subpoena, a reasonable inference may be drawn that White views the motion to dismiss as having no value. However, the motion did have value. Once again, without deciding whether under Rule 24 Negrete was able to adequately represent NIC's interests in challenging jurisdiction over NTG's motion to compel compliance with Document Subpoena, it is sufficient for the Special Master to find, here, that it was not unreasonable for NIC to file the motion to dismiss in the North Carolina case. And it can be said with certainty that NIC's motion to dismiss was ultimately successful, as Judge Selna noted when granting NIC attorney fees relating to the motion. For these reasons, the Special Master concludes that Emord Firm's and M&V's hours relating to the motion to dismiss were not unreasonable.

Additionally, NTG argues that in the North Carolina case, Emord Firm and M&V failed to comply with regular billing standards: Cole billed 4.4 hours for administrative tasks; Kim's 3.6 hours were for administrative tasks; Emord Firm billed for duplicative work and overstaffing, such as billing 19.8 hours to prepare the motion to intervene and billing 1.5 hours for reviewing the Order transferring the North Carolina case; and both firms improperly blocked billed. White Decl. ¶¶ 46, 49, 52-53. In response to White's criticisms, NIC has voluntarily deducted a total of 5.65 hours or $956.25 from its fees' request.

At oral argument, NIC pointed out several billing entries by Emord Firm that it argues were unreasonable because they related to conferring with Negrete, drafting the joint defense or common interest agreement, reviewing Negrete's filings, and uploading documents for Negrete. Hours spent reviewing Negrete's filings were reasonably related to NIC's representation by Emord

Firm; however, hours spent conferring with Negrete, drafting agreements with Negrete, and uploading documents for him were not. Thus, the Special Master has determined the following fees (and associated hours) were not reasonable in the circumstances of the North Carolina case: Apr 19/2018 – 42.50; Apr 19/2018 - $340; Apr 25/2018 -- $357.50; Apr 30/2018 -- $110; Apr 30/2018- $255; Apr 30/2018 - $85; May 2/2018 - $82.50; May 3/2018- 12.50; May 4, 2018 - $315; May 7/2018 - $25; and May 17/2018 - $55.  Deducting the foregoing fees ($1,680) and associated hours, reduces Emord Firm's attorney fees to $21,035, which the Special Master finds is reasonable for Emord Firm's legal work in the North Carolina case.  Combining Emord Firm's attorney fees with M&V's attorney fees ($8,598.75) brings NIC's attorney fees for legal work in the North Carolina case to **$29,633.75.**  However, because some of M&V's hours are duplicative of Emord Firm's hours and not reasonable in light of  M&V's role as local counsel, an across-the-board reduction to M&V's fees will be made, as discussed below.

ii.  <u>Legal Work in Central District.</u>

The Emord Firm billed **154.45 hours** for legal work in the Central District opposing Negrete's recalled deposition and seeking a protective order, which amounts to **$43,768.75** at Emord Firm's reasonable hourly rates.  Furman Decl. ¶¶ 17-18, Exh. 1. NTG argues that the number of hours billed were not reasonable for opposing a short, supplemental deposition;  rather, the legal work should have cost no more than $15,000.  See, White Decl. ¶¶ 44, 53, 57-58.  NTG also argues that Emord Firm failed to comply with billing standards in the Central District: attorneys and paralegal billed for administrative tasks, totaling 2.2 hours; duplicative work and overstaffing, resulting, for example, in billing more than 33 hours to file an opposition to Negrete's recalled deposition, more than 11.3 hours to review the Special Master's tentative order and

20

prepare for a half-hour oral argument, and 29.9 hours to file objections to the Special Master's Order; and improper block-billing and vague entries.  White Decl. ¶¶ 43, 45, 48, 50-52; Sperber Decl. ¶ 15.

Initially, White's opinion that a reasonable fee for the legal work in the Central District is $15,000 is pure speculation.  Even if the allegedly excessive, duplicative and erroneous hours White cites were deducted from the fees NIC requests, more than 75 hours of legal work would remain, and awarding $15,000 for those hours would amount to only $200 per hour.  That would not be a reasonable fee for Emord Firm's legal work in the Central District.

Nevertheless, the Special Master, having reviewed Exhibit 1, agrees that the number of hours Emord Firm spent in the Central District (154.45 hours)  were excessive and not reasonable. The Special Master, of course, understands that it may take a younger or less experienced attorney more time than an older or more experienced colleague to perform legal tasks, and the trade-off is a lesser hourly rate than would be charged by a more experienced attorney. Nevertheless, law firms often acknowledge the reality of excessive hours by less experienced counsel and voluntarily deduct a percentage of the junior attorney's time.  NIC has not done so.  Here, the Special Master finds that (except for meeting-and-conferring) it was unreasonable for Emord Firm:  (a)  between April 29 and May 6, 2019, to spend more than 30 hours drafting an opposition to NTG's motion to compel recalled Negrete deposition and motion for protective order; (b) between June 3 and June 27, 2019, to spend approximately 14 hours preparing for oral argument before the Special Master – especially when the Tentative Order denied NTG's motion to compel Negrete's recalled

deposition;[7] and (c) between June 27 and July 12, 2019, to spend approximately 27 hours for legal work associated with filing Limited Objections to the Special Master's Order.  Furman Decl. ¶ 5, Exh. 1.

Most parties seeking attorney fees provide the court with the number of hours of legal work performed by each member of the law firm's legal staff, whether an attorney or a paralegal, so that if the court determines an attorney's (or paralegal's) hours were not reasonable, the court may reduce that individual's hours without affecting the hours expended by others. Here, NIC has not separately listed the hours spent by each member of Emord Firm's legal staff and instead collectively states all hours billed by Emord Firm.  Although a reduction for excessive or unreasonable hours applies to *hours* -- not fees -- without a breakdown of hours by attorney (and paralegal) it is too time-consuming for the Special Master to calculate how the reductions in unreasonable hours should be calculated on an attorney-by-attorney or paralegal basis; thus, the reduction will be made across-the-board to the amount of legal fees.  In calculating an across-the-board reduction, the Special Master has primarily considered the nature and complexity of the legal work, the skills required for the legal work, and the outcome of the particular legal work. Considering these factors, the Special Master concludes that a reasonable reduction for excessive or duplicative work is 20 percent.  This 20 percent reduction applies to Emord Firm's legal work in the Central District, reducing that amount to $35,015, and to M&V's legal work in the North Carolina case, reducing M&V's fees to $6,879.  Combining these amounts with Emord Firm's fees in the North Carolina case ($21,035), the total amount of NIC's reasonable attorney fees for legal

---

[7]   The Special Master issued the Tentative Order denying NTG's motion to compel Negrete's recalled deposition on June 3, 2019, and oral argument was heard on June 27, 2019.  The final Order issued that day.

services in the North Carolina case and the Central District amounts to **$62,929.**

"Block billing" is grouping together numerous entries without specifying the time spent on each task, thereby rendering such billings vague and making it impossible for the client or a reviewing court to determine how much time was spent on each task and whether the amount of time was reasonable. White Decl. ¶¶ 54-56. Because of block billing, White recommends that all hours submitted by Emord Firm (as well as M&V) should be reduced by 30%. *Id.* at 56. The Special Master agrees that block billing is not a particularly good practice for law firms that expect to seek approval of reasonable attorney fees, *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007), even if all items listed in a block are compensable. Here, many of Emord Firm's billings (and M&V's billings) are block billings, see e.g., Furman Decl. ¶ 4, Exh. 1 (May 21/2018 (JSF) - 2.2 hours "Researched precedent cited by NTG re Claims Process Rules and incorporated into draft Reply re Objections"). Courts usually reduce block billings by 10 to 30 percent. However, because it appears that all of the items Emord Firm (as well as M&V) block billed are compensable, the Special Master exercises her discretion not to further reduce NIC's fees on this ground.

Lastly, the Special Master finds merit in NTG's argument that Emord Firm's hours for preparing the attorney fees motion and reply ("fees on fees") are unreasonable and excessive. All in all, NIC requests compensation for **36.7 hours** for legal work (22.9 hours to prepare the fees motion and 13.8 hours to prepare the reply), which amounts to $9,779. The Special Master finds these hours are excessive and unreasonable considering the non-complex nature of the legal work and the skills required, and concludes the fees on fees request should be reduced by the same 20 percent as the attorney fees on the merits of the Negrete discovery disputes. *Thomas v. Gomez*, 45

F.3d 1365, 1366-1368 (9th Cir. 1995); *United States ex rel. Sant v. Biotronik, Inc.*, 716 Fed. Appx. 590, 593 (9th Cir. 2017).  Accordingly, NIC's request for attorney fees for seeking attorney fees is reduced to **$7,823.20**, which the Special Master concludes is reasonable.

        *c.  Costs.*

NIC seeks reimbursement in the amount of $6,506 for its share of the Special Master's and JAMS' fees related to the Negrete discovery disputes.  In its opposition, NTG asserts that NIC is seeking reimbursement for .75 hours ($150.00) billed on March 15 and March 16, 2019, and 1 hour ($200) billed on April 1, 2019, which are Special Master's fees not related to the Negrete discovery disputes. Sperber Decl. ¶¶ 16-18.  NIC does not address NTG's objections in its reply. The Special Master agrees with NTG, having reviewed Exhibit 3 to the Furman Declaration, and thus, reduces the costs by $350. Accordingly, the costs awarded to NIC shall be in the amount of **$6,156.**

**ORDER**

Defendant Newport Trial Group shall pay Plaintiff Natural-Immunogenics Corp. reasonable attorney fees and costs in the total amount of **$76,908.20**, no later than thirty (30) days from the entry of this Order.

Date:  June 1, 2020                    By: _____
1220053347.72B                          Hon. Rosalyn Chapman (Ret.)
                                        Special Master

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28